May it please the court. Edie Cunningham of the Federal Defender's Office on behalf of Mr. Preston. Reversal is required because of the district court's error in admitting highly prejudicial opinion and 404B evidence. The prejudice was compounded by the prosecutor's improper questioning and comments. I'll start with the opinion evidence. As the government acknowledged in closing argument, the only issue for the jury was whether they believed TR's allegations. His therapist repeatedly testified that in her opinion those allegations were true. This was clearly improper under this court's precedence and it was highly prejudicial because the case hinged on TR's credibility. The limiting instruction that was not given until the next day was insufficient to cure the prejudice. This was devastating testimony in this kind of a case. And after the instruction was given, the jurors made clear that they still didn't quite understand that they weren't supposed to be listening to the witness's opinions. That was a totally different witness, though, wasn't it? The instruction had to do with the testimony regarding the expert witness, Ms. Broussard, correct? Yes, Your Honor, that is correct, but the instruction also said you are the sole judges of credibility and you are to disregard opinions on credibility. This was a case, since it hinged on credibility, and there was no physical evidence, there was no eyewitness testimony to corroborate the abuse, it was, the jurors were obviously struggling. They were asking for opinions. They asked the therapist. They asked TR's brother what he thought. didn't you, by asking that the e-mail be allowed to be admitted? The e-mail of Ms. Broussard where she talked about the fact that she thought the defendant was lying about his abuse, his drug abuse, correct? I have two responses to that. The first is things played out very differently at trial. It was anticipated pre-trial that the defense would be calling the therapist, but that's not what happened. What happened at trial is that TR admitted on the stand that he had lied to the therapist about his drug use. There would have been no point for the defense to get into that with the therapist. It was the government who ended up calling the therapist, and the government jumped the gun and asked not just about a general opinion, which in and of itself might have been wrong in that context, but asked specifically, did you believe the sexual abuse allegations, which were at the heart of the case? So that's very different. Well, how do you respond to their argument that essentially that was an invited error because the reason that that initial opinion about whether or not he was lying about drug abuse came into the case because of the motion by the defense attorney? Well, Your Honor, as I just explained, things happened differently at trial. The defense is entitled to change its strategy, but beyond that, nothing in the district court's order allowed anybody to get into opinions about the sexual abuse allegations. The way the district court's order was worded was that if the defense elicits an opinion on dishonesty from the therapist, then the prosecutor can ask whether that opinion is limited to drug abuse or made more broadly. Nothing in that order, even if it was still relevant, gave the prosecutor license to do what it did at trial. By asking about whether he was lying about sexual abuse, correct? Yes, going right to the heart of the case, which is clearly impermissible under this court's precedence, and it's just devastating. It's as bad as it gets in a case like this. And there was an objection? Yes, Your Honor. When that first happened, when the prosecutor asked, did you think he was lying about the sex abuse allegations, there was an objection right then on foundation and speculation. Before the answer was given. Before the answer was given, it was overruled on speculation and foundation grounds, and then, of course, the therapist... What does that mean? Excuse me? Oh, I'm sorry. The objection was overruled. The objection was on foundation and speculation. Oh, I see. It was overruled. I probably misspoke. And, you know, after that... It sounds like the ruling was... Okay.  The ruling... Was on speculation and foundation grounds. Foundation. It was not on grounds of improper... Well, as I explained in the brief, Your Honor, you don't have to use magic words. You just have to convey why it's wrong. And the reason why opinion testimony is wrong is because it's speculative. And so, therefore, I posit that that was a correct objection. And then, of course, after that... I thought your objection was somewhat different in that you had somebody who was an expert, and the expert is then telling the jury, based on my expertise, you should believe this witness. That was also part of it in... That's almost the antithesis of speculative. That is the... Objection is, here's somebody speaking with authority, the kind of authority that they should not bring before the jury. Well, Your Honor, in that first instance, the defense objected based on speculation and foundation. Later, the defense objected to another impermissible question based on ultimate opinion. And this therapist was not noticed as an expert. She testified as an expert on many occasions, but she was not noticed as an expert. Wasn't that why the court gave the curative instruction also? Because it had to do with opinion testimony and credibility? Yes, Your Honor. But, as I've explained in the brief, in some instances when something is just this devastating, a curative instruction is not going to be enough when something is this prejudicial. And courts do reverse despite curative instructions in these extreme kind of situations. I've cited cases in the brief to that effect. If there are no further questions on that topic, I'll move on to the 404B issue. The 2003 incident was admitted to show propensity. Sexual interest in a child is a character trait, as cases I've cited indicate, as well as Judge Kleinfeld's concurrence in Curtin. By the terms of the district court's own ruling, the evidence was admitted because it purportedly showed, and these were only allegations, but it purportedly showed my client's sexual interest in a young boy that could make it more likely that he harbored a sexual intent in 1998. But that is what is prohibited by 404B1. If the only way to show a proffered purpose is through a propensity inference, then that is inadmissible. And Old Chief makes that crystal clear, because Old Chief says it's improper to generalize a person's extrinsic act into bad character and then reason that it raises the odds that the defendant committed the act and the charged offenses. That's exactly the kind of reasoning that the district court engaged in. And this court's precedents make it clear that that type of reasoning is improper. Hernandez-Miranda, Bradley, Rodriguez, I believe, expresses it very clearly. And certainly the Seventh Circuit's en banc opinion in Gomez explains it very clearly. Well, the government's position would be that it was offered for intent, correct? Well, Your Honor, the only way... Will you address that? Yes, Your Honor. That was the proffered purpose. But the only way it can show intent is by engaging in propensity-based reasoning. There's no independent way it shows intent, as opposed to, say, in Curtin, where the defendant had the stories on his person at the very time he went to meet the young girl, or who he thought was a young girl, and he claimed, no, I didn't really want to meet a young girl. I wanted to meet an adult and role play. But that's not what the stories were about. And the Curtin court said, well, it illuminates his intent, because he had it with him at the time. And are you saying it's significant that in that case the defendant specifically claimed that he did not have intent? Yes, Your Honor. And that speaks to the 403 issue as well. Because the extent to which something is at issue affects the 403 balancing. That is clear from the advisory committee notes themselves for 403 that says you have to balance the probative value and need for the evidence against the potential for unfair prejudice. And it's also clear under this Court's precedence both before and after Hadley, which is what the district court relied on, but we have McCollum, which is discussed. Under Hadley and 404B, does it have to be a similar act? Yes, Your Honor. And that's another point I wanted to make. In Hadley, the acts at issue were almost identical, and they happened before the alleged offense. And this circuit uses similarity as a precautionary measure to try to make sure that propensity-based evidence doesn't come in. Here, the acts were very different, the alleged acts were very different, because they didn't involve any sexual acts with a child. It was something that was protected, you know, private behavior in one's own home with a perfectly legal picture of a child. So it's very different. And also, the allegations in this case occurred after the charged acts, so there's really no way to use them to show intent except via propensity, because they didn't even exist yet. And even if the evidence was marginally relevant in a non-propensity way under 404B, the prejudicial impact far outweighed any marginal probative value. This is very, very inflammatory evidence, as this Court's cases point out. Okay. You've only got four minutes, a little left, and I know you want to save time for rebuttal. Yes, Your Honor, I would. Did you have a vouching argument? Yes, Your Honor. There were a couple of, well, throughout the opening statement and closing argument, the government repeatedly said TR's allegations are the truth, this is the truth, this is the uncontroverted truth. Also, when questioning Agent Dallacroce, the prosecutor elicited that he had educated himself about the case, looked at reports and statements and all of these things, and then elicited from Agent Dallacroce that he did not believe Mr. Preston's denials, and so that suggested to the jury that he had some outside information, and that's where the jury's questions came in, asking him, why didn't you believe? So both of those things are impermissible vouching, and I understand that the prosecutor, at the very end of closing argument... What were the answers? To why didn't he believe those questions weren't asked, there was an objection to the question and they weren't asked, but it shows that that was on the juror's mind. So the jury sent the note, the question? Yes. This was during trial? During trial, yes. So this is Arizona? Yes. Where Judge Bolton is a leader in innovative procedures for juries? Yes, our jurors ask questions. Highly commendable, and so juries are actually allowed to ask questions during the criminal trial? Yes, they are, and if I could reserve the rest of my time. Okay. Can you please support? I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the United States. As far as the opinion evidence of Boussart, I think it's important to look at the context of how that came about, and also I would suggest the record reflects that the alleged defense change in strategy actually did not occur. The court pretrial ruled that the defendant could get into that e-mail from Boussart to the pretrial service office, but she suspected that the victim was lying about his drug abuse, or drug use, excuse me. When Boussart was testifying, the government decided to draw the sting, which is the typical prosecution technique, and the objection the defendant made was not, hey, we're not going into this now, or hey, this is an improper opinion. It was speculation and foundation, not alerting anybody in the courtroom that they either changed their strategy or they weren't intending to get into that e-mail on cross-examination, which exactly is what they did. They got into the e-mail on cross-examination. They made a statement that suggested they were trying to imply to the jury that Boussart's opinion was broader than it was. Then on redirecting, the government tried to clarify there was an objection on the opinion ground, and that's when the judge gave the limiting instruction, striking the evidence, and telling the jurors that they were the sole judges of credibility. Whatever happened beforehand, that jury's objective. Well, counsel, on direct as well, there was a question about whether or not she believed his allegations regarding sexual abuse, wasn't there? There was, yes. Under what theory is that permissible? They were. He's asking an expert witness about whether or not he believed the allegations that were before the jury, whether they were true or not? What the court ordered pretrial allowed the government to do was clarify the extent of Boussart. When the defense wanted to get into that e-mail, the court authorized the government to make sure the jury had the appropriate information. Right, but wasn't that to limit it to say she was only saying that he was lying about the other matters, not about sexual abuse? Lying about drugs. Not to say, by the way, was, did you believe he was lying about the sexual abuse? I would say it was. The judge didn't authorize that. Did the judge, are you saying the judge authorized that? I'm saying the judge authorized, the judge's order authorized the government to clarify the extent of Boussart's opinion. And I'm, I would suggest. Boussart's opinion on anything? As far as anything. The upcoming presidential election, too? I mean, you know, no, I mean, it was, the question was whether or not the witness, the victim, the alleged victim, was lying about drugs. I mean, that was the scope. That was the e-mail. How does that authorize a question about something clearly improper? Do you believe the witness is to the ultimate crime? What, as, obviously I can't read the district court's mind, but what the court appeared to be doing was telling the defense, if you want to get into that opinion about his lying about his drug abuse, the government can clarify the extent of her opinion about his lying. As a practical matter, I'm not sure there's much of a distinction between he was only lying about drug abuse and he was not lying about the sexual abuse. That's functionally the same. Really? Really? You think lying about whether you are abusing drugs is the same as lying about whether you are being molested? You think those two things are sort of like, you can't have one without the other? Like love and marriage? I must have been unclear. What I'm saying is... We're unclear. I thought you were clear, but if you want to say you're unclear, okay, let's try again. You know, I wish we had an hour for this case. We've only touched on a couple of the principal objections, which have real substance as far as I'm concerned. I've got time. You want to wait, spend an hour on this one? Whatever it takes. Well, that's a change in your usual approach. There we go. Okay. I would say, Judge, that both sides, I think, wrote a pretty good and thorough brief on all the issues. Including the prosecutor's drawing attention to the defendant's failure to testify. This is a serious issue. The government vouching for the credibility. The misstating of evidence in the summation. Got a lot of issues. I don't know how we would cover that without... Which ones do you think are the worst? What the defense counsel, Ms. Cunningham, focused on was what I expected she would focus on in this argument. So I think we both agree that those are the issues. Those are the key issues in this case. You don't disagree, basically, that it's inappropriate to ask an expert witness to opine on the credibility of the victim about the ultimate issue in a criminal case, do you? I do not disagree with that. Okay. So maybe you would want to move on and address either the 404B or whatever else you think is important. Can I just clarify Judge Kuczynski's question? What I was saying, or what I thought I was saying, was there is no functional difference between he is only lying about... I suspect he's only lying about his drug abuse. And I suspect he was not lying about... I'm not expressing any opinion on that. On one, I know he was lying. Another, I have no opinion. Okay. That's a lot different from saying my opinion is he was telling the truth. And, again, to the extent that there was a problem, it was cured by the instruction. Okay, so then we... I'm still trying to understand why you think the two are... There's really no practical difference between the two. You made the statement twice now, but I don't get it. They seem quite different. Well, the statement that he wasn't lying about anything else other than... I suspected he was not lying about anything else other than the drug abuse, would by necessity encompass he was not lying about the sexual abuse. But why express a view at all about anything other than the drug abuse? You can say, look, I think he was lying about drug abuse. I think he was not lying about drug abuse. Then talking about what else he might have been lying, or if anything else he might have been lying about whether it's sexual abuse or about lying about his age to get drinks in a bar, all of those things seem to be different. And one could easily say, I think he was lying about drug abuse without expressing any view whatsoever about whether he's lying about anything else. And I guess what I'm trying to understand from you is why you think it was appropriate to get into anything else other than is he lying about this, is he not lying about this, this being the drug abuse. It was appropriate to prevent the defense from creating a misleading impression with the jury that Boussart did not believe him about the sexual abuse, which was how the defense was trying to use that email. What had they done to suggest that? When they were cross-examining Boussart, they basically said, well, when you talk about he's not being truthful, you don't specifically restrict that to the drug abuse. There's something very close to that. So by making that kind of inference, they're trying to suggest to the jury that she thought he might have been lying about other stuff, and that came before this statement that he's not lying about anything else. It came after the first statement where there wasn't the objection, the appropriate objection that they're making now, but during the cross-examination of Boussart. But you don't disagree that the proper way to have done that would have been to simply ask the expert if she has problems, based on her experience with the victim's credibility, they relate to his drug abuse and not to something else, right? Wouldn't that have been sufficient? Only to drug abuse would have been sufficient, probably. Only to the drug abuse. And it was not appropriate to then go on and say, by the way, you didn't think he was lying about the sexual abuse, did you? The government should have stopped it only. The government should have been able to in some ways show, I only think he's lying about the drug abuse and not anything else. The phraseology may have been inappropriate, but clearly the jury is. One question too many, right? Excuse me? The government asked one question too many. They did specifically ask about the sexual abuse. The alleged sexual abuse, right? Right. It could have been possible to stop before that question and still have limited the disbelief to the drug abuse, right? It could have, yes. I think that illustrates the importance of the defense making an appropriate objection. Were you the Thai lawyer? No, I was not. I guess that Thai lawyer just went too far, right? Well, I'm going to say that the questions, the way the evidence came out was not appropriate, but the curative instruction took care of it. That's the bottom line. And how do you respond to counsel's concern about the jury question that suggested that the curative instruction did not accomplish its goal because the jurors, again, asked another witness, who was also being asked what they believed in, why they believed it? They could have been looking for factual information there with that question to an FBI agent. And, again, that question wasn't asked. But basically the agent was referring to his interrogation or his questioning of the defendant, and he said he told the defendant he didn't believe him. And then the defendant made the statement about the Matthews. That, the fact that they wanted to know what information was he basing that on, again, you could argue that's asking for factual information, not an opinion, actually. Let's get on some of the other issues in your limited time. What about the similar act under Hadley? Okay. As far as the 404B evidence, it's a similarity. The similarity is basically a factor that is to make sure that the evidence is being admitted for the proper purpose that it is offered for. In other words, is the evidence sufficiently similar in probative that it goes to the ‑‑ that it's relevant to the proposition for why the government's introducing it? Are they supposed to be similar acts? They're supposed to be similar enough so that ‑‑ Similar enough. And your assertion is that he masturbated a number of years later with a picture of a child to show that he actually engaged in child molestation? No, that's not why it was offered, Judge. Why was it offered? The evidence was offered because several of the counts in the indictment required the government to prove that the defendant had, and I quote, an intent to abuse, humiliate, harass, degrade or arouse or gratify the sexual desire of any person. That was the intent the government had to prove. That evidence, the 404B evidence, the masturbating to the picture of a child who was about the same age as the victim in this case, is certainly relevant to establishing that element. How does it establish that element without having a propensity‑based purpose to it? Because you're looking at the ‑‑ the government has to prove the intent of the defendant. Well, they don't object to intent, right? I mean, there was no denial of having had the intent. There was just a general denial that he didn't do it, correct? Yes, but the government still has to prove every element of a crime beyond the reasonable. Of course. Well, in fact, we have had a couple cases recently involving Indian country crimes where there was no disputed trial that the defendant was an Indian, and then the cases get reversed because the government didn't sufficiently prove the defendant's Indian status. So just because they don't contest it doesn't mean the government doesn't have to prove it and prove it convincingly and beyond a reasonable doubt. And that was what this evidence went to, and it was relevant. How does this go to intent? How does this make intent more likely than not without having the propensity‑based inference being drawn here? The government had to show he had an intent to ‑‑ of sexual arousal, let's say, sexual arousal or gratification. Clearly, the fact that he is sexually aroused or gratified by a ‑‑ Is this what the district court said, or are you coming up with this after the fact? The district court basically said it was relevant, and he rejected the argument that the defense made that the defendant's intent towards young children may change over time because there was a five‑year time gap between the two. But he said it was relevant to the intent to the specific intent that's required by the statute. I don't understand the specific intent argument at all. Why would somebody who masturbates even forget it's a child? It means that he will engage in an act of sexual intercourse. It shows that the defendant ‑‑ it's evidence that it's relevant because it shows that the defendant obtains sexual arousal by a young boy. Isn't that ‑‑ that's very close to his character, isn't it? I mean, isn't that part of the problem? It sounds like you're saying he was a child molester. He had a preference for children. That is definitely not how the evidence was used at trial. The court gave a limiting instruction, and the prosecutor in the closing argument specifically said you could only consider it as it related to the element of intent. So it was used for the ‑‑ it was introduced for the proper purpose. It was argued for the proper purpose and was used for the proper purpose. And, again, at this stage, it's an abuse of discretion. You don't think it's more prejudicial than the value of what that proves outweighs the prejudice of that admission? Well, again, the court made ‑‑ What do you think a juror thinks when you say this guy not only had sex with this boy, but he loves young boys and masturbates to them? You don't think that would have more of a prejudicial effect than the value you get out of the admission of that evidence? I think when they're instructed to view it as far as the intent element, and the intent element is very specific, that it requires sexual arousal or gratification.  It's argued for that purpose. The jury used it for that purpose. Yeah. I know the theory, but I think you probably know the reality, as did the prosecutor who introduced that. The government produced this because it was admissible under 404B, and the district court certainly did not view it. Because it was the best possible way to prejudice the jury. Actually, everything the government does is to prejudice the jury against the defendant. The question is, is it improperly prejudicial? I mean, all the evidence prejudices the defendant that the government introduces. The question is, is it improper? And in this case, it was not improper because it was admitted for a— it was relevant to the very specific intent the statute requires, and it was used and argued for that purpose. And as far as the vouching argument, real quickly— As far as what? The vouching argument. Again, this is another sequence that shows the importance of a contemporaneous objection. As the defense counsel argued, there were several times when the prosecutor essentially said the victim was telling the truth. When there was a proper objection— The victim was what? Telling the truth. When there was a proper objection, the prosecutor said, well, that's not—I'm not saying you should believe it because I'm saying it. You should believe it because that's what the evidence shows. Isn't that sort of an acknowledgment that that was a mistake? Yes, and it's also curative of any mistake that was. Because, again, they're clearly telling the jury— I'm not suggesting there's out-of-record information that— How many times did the prosecutor do this? How many times did the prosecutor do this? As far as the victim telling the truth, my memory, and I'm not—I think it's like five or six times maybe, but I'm not— That's about right. I'm not totally— Sounds like a theme more than a mistake. Well, I also would suggest that in context, what the prosecutor was intending to say, and actually arguably even saying, although perhaps somewhat ambiguously, was the evidence shows the victim was telling the truth. And the evidence did show the victim was telling the truth. Let me ask you one more subject to give you a chance to comment on. You do not think, I gather, that the argument that there's no testimony that contradicts Tim Rosenberg's testimony, that that doesn't call attention to the fact that the defendant didn't testify? No, because there was other ways they could have contradicted— I know there were others, but when you say there's no testimony on the other side, you don't think that draws attention to the fact that the defendant didn't testify? No, and especially in the context of how it's phrased as far as to the victim's testimony. The victim's testimony was much broader than simply the defendant sexually abused me. There was the circumstances of his interactions with the defendant, about sleeping on the couch, about all of that. There was no evidence that contradicted any of that, and that certainly could have been provided by other witnesses. And there was not just no evidence. There's no evidence, and there's no testimony. Right. Other people could have provided testimony. The defendant wasn't the only one that could have testified about— Who would have been the most likely to be able to provide testimony? As far as some of the what was going on in that house, it could have been the ex-wife. It could have been the victim's brother. But their testimony coincided with what the victim was saying. The fact that the facts – there weren't factually witnesses who could come in and testify that what the victim was saying was wrong doesn't mean the defendant was the only person that could have rebutted that. Well, the rule is that we're not supposed to call attention to the fact that the defendant didn't testify. That is correct. Yes. But we can't draw our attention to the— We can say, but nobody testified. We can draw our attention to the fact that the defense didn't produce evidence or testimony. Yes. And that's the distinction. Okay. Thank you. At least I wanted to give you an opportunity to comment. Thank you. Thank you. I'll start with a comment on the failure to testify. The prosecutor's comment was specific to TR's testimony on the sexual abuse allegations. And as Your Honor said, there was no one else who could have testified to that. TR said that there was no one else in the room, no one else in the house when it happened. And the case is cited in the reply brief speak directly to that issue. As far as the vouching, we understand that there wasn't an objection until the end. But as the Court indicated, this was a theme of opening and closing statement. It certainly conveyed the prosecutor's opinion on the veracity of its key witness. Prosecutors are held to a higher standard under Weatherspoon, and they are expected to know not to do that. With regard to the 404B evidence, intent was not in dispute. It is technically an element of the touching counts because conceivably there could be a medical or caretaking purpose. But there was nothing like that going on. How do you respond to the argument of the government that there was a very detailed specific intent requirement that included having a certain sexual arousal effect? Well, Your Honor, as we discussed in my opening argument, that wasn't disputed. The defense was it didn't happen. And the extent to which something is disputed has to be taken into account under 403. In fact, this Court in McCollum said if there is a dispute as to whether the allegations even occurred, 404B evidence doesn't come in for intent. And the other cases are consistent with that. Hadley is inconsistent with cases that came before and after, inconsistent with the advisory committee notes to 403, old chief, and everything that's out there. And the limiting instruction was ineffective. The limiting instruction, even if a jury could follow it in the face of such prejudicial emotional evidence, didn't even tell the jury not to use it for propensity. So because intent wasn't even at issue, how else would they use it? They would naturally use it for propensity. Thank you, counsel. Thank you, Your Honor. The case just argued is submitted.
judges: Reinhardt, Kozinski, Berg